1  EVAN R. MOSES, CA Bar No. 198095
   evan.moses@ogletree.com
2  OGLETREE, DEAKINS, NASH,
   SMOAK & STEWART, P.C.
3  400 South Hope Street, Suite 1200
   Los Angeles, CA 90071
4  Telephone: 213-239-9800
   Facsimile: 213-239-9045
5
   ALEXANDRA ASTERLIN, CA Bar No. 238385
6  alexandra.asterlin@ogletree.com
   ERIC E. SUITS, CA Bar No. 232762
7  eric.suits@ogletree.com
   OGLETREE, DEAKINS, NASH,
8  SMOAK & STEWART, P.C.
   500 Capitol Mall, Suite 2500
9  Sacramento, CA 95814
   Telephone: 916-840-3150
10 Facsimile: 916-840-3159

11 Attorneys for Defendant
   AUTOZONERS, LLC

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ZACHARY LEWIS, an individual, on behalf of himself and on behalf of all persons similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AUTOZONERS, LLC, a Limited Liability Company; and DOES 1 through 50, inclusive<br><br>Defendants. | Case No. '23CV1441 L    SBC<br><br>**DEFENDANT AUTOZONERS, LLC'S NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT**<br><br>[Filed concurrently with Civil Cover Sheet; Certification of Interested Parties and Disclosure Statement; Notice of Related Cases; Declarations of Eric Suits, Michele Wood, Patrick Johnson, and John Babick in Support of Removal]<br><br>Complaint Filed: May 17, 2023<br>Trial Date: TBD |

TO THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA AND TO PLAINTIFF ZACHARY LEWIS AND HIS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT defendant AutoZoners, LLC ("Defendant"), by and through the undersigned counsel, hereby removes the above-entitled action from the Superior Court of the State of California for the County of San Diego to the United States District Court for the Southern District of California pursuant to 28 U.S.C. Sections 1332, 1441(a) and 1446. In support of such removal, Defendant states as follows:

## I. TIMELINESS OF REMOVAL

1. Plaintiff ZACHARY LEWIS, ("Plaintiff") filed this Complaint alleging one cause of action under the California Private Attorneys General Act of 2004, California Labor Code §§ 2698, et seq. ("PAGA"), in San Diego County Superior Court, State of California, Case No. 37-2023-00021114-CU-OE-CTL, on May 17, 2023. Pursuant to 28 U.S.C. § 1446(a), true and correct copies of the Summons and Complaint, and all other process, pleadings, and orders served on Defendant in the State Court Action are attached to this Notice of Removal as **Exhibit A**.

2. On July 7, 2023, Defendant received service of the Summons and Complaint through its registered agents for service of process. These documents were the initial pleadings received by Defendant setting forth of the claims upon which this action is based. True and correct copies of these documents, along with all pleadings, process, and other documents Defendant has received in this action are attached hereto as **Exhibit A.**

3. A CAFA case may be removed at any time, provided that neither of the two 30-day periods under 28 U.S.C. § 1446(b)(1) and (b)(3) has been triggered. *Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1126 (9th Cir. 2013).

4. 28 U.S.C. § 1446(b)(1) provides that, "[t]he notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant,

through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based…"

5. "[N]otice of removability under § 1446(b)(1) is determined through examination of the four corners of the applicable pleadings[.]" *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 694 (9th Cir. 2005). The Complaint does not "reveal on its face the facts necessary for federal court jurisdiction." *Rea v. Michaels Stores, Inc.*, 742 F.3d 1234, 1238 (9th Cir. 2014) (quoting *Harris*, 425 F.3d at 691-92). Specifically, it does not reveal on its face that the amount in controversy exceeds $5,000,000 for CAFA removal purposes.

6. Plaintiff also never served Defendant with an "other paper" sufficient to trigger the second 30-day clock. 28 U.S.C. § 1446(b)(3). Indeed, Plaintiff has not served Defendant with any documents other than those attached to this Notice of Removal.

7. Therefore, because neither of the two 30-day periods under 28 U.S.C. § 1446(b)(1) and (b)(3) has been triggered, removal is timely.

8. Nonetheless, Defendant also removed this action within 30 days of being served, so removal is timely.

## II. SUMMARY OF ALLEGATIONS AND GROUNDS FOR REMOVAL

9. Removal is proper pursuant to 28 U.S.C. §§ 1441 and 1453 because this Court has subject-matter jurisdiction over this action and all claims asserted against Defendant, pursuant to the Class Action Fairness Act of 2005 ("CAFA"), id. § 1332(d).

10. CAFA applies "to any class action before or after the entry of a class certification order by the court with respect to that action." 28 U.S.C. § 1332(d)(8). This case is a putative "class action" under CAFA because it was brought under Civ. Proc. Code § 382, California's state statute or rule authorizing an action to be brought by one or more representative persons as a class action. See 28 U.S.C. § 1332(d)(1)(B).

11. Plaintiff seeks to represent the following Class: "[A]ll individuals who are or previously were employed by DEFENDANT in California, including any employees staffed with DEFENDANT by a third party, and classified as non-exempt (the "CALIFORNIA CLASS") at any time during the period beginning four (4) years prior to the filing of this Complaint and ending on the date as determined by the Court (the "CALIFORNIA CLASS PERIOD")." (Compl., ¶ 30.)

12. Plaintiff further seeks to represent the following California sub-class: "[A]ll individuals who are or previously were employed by DEFENDANT in California, including any employees staffed with DEFENDANT by a third party, and classified as non-exempt (the "CALIFORNIA CLASS") at any time during the period beginning three (3) years prior to the filing of this Complaint and ending on the date as determined by the Court (the "CALIFORNIA LABOR SUB-CLASS PERIOD")." (Compl., ¶ 40.)

13. In the Complaint, Plaintiff alleges nine (9) causes of action against Defendant: (1) Unfair Competition; (2) Failure to Pay Minimum Wages; (3) Failure to Pay Overtime Wages; (4) Failure to Provide Required Meal Periods; (5) Failure to provide Required Rest Periods; (6) Failure to Provide Accurate Wage Statements; (7) Failure to Reimburse Employees For Required Expenses; (8) Failure to Provide Wages When Due; and (9) Failure to Pay Sick Pay Wages.

14. Among other things, Plaintiff alleges putative class members are entitled to unpaid wages—both minimum wages and overtime, meal and rest period premiums, unreimbursed business expenses, statutory penalties for late payment of wages and inaccurate wage statements, interest, and attorneys' fees. (Compl., ¶¶ 8-27.) More specifically, Plaintiff alleges the following: "DEFENDANT require[d] PLAINTIFF and CALIFORNIA CLASS Members to work without paying them for all the time they [were] under DEFENDANT's control…" (Compl., ¶ 8); "DEFENDANT require[d] PLAINTIFF to work while clocked out during…PLAINTIFF's off-duty meal break" (*Id*.); "DEFENDANT…administer[ed]

a uniform practice of rounding the actual time worked and recorded by PLAINTIFF and CALIFORNIA CLASS Members…so that during the course of their employment, PLAINTIFF and CALIFORNIA CLASS Members [were] paid less than they would have been paid had they been paid for actual recorded time rather than "rounded" time " (*Id.*); "DEFENDANT's policy and practice not to pay PLAINTIFF and other CALIFORNIA CLASS Members for all time worked, is evidence by DEFENDANT's business records" (*Id.*); "DEFENDANT engage[d] in the practice of requiring PLAINTIFF and CALIFORNIA CLASS Members…to submit to mandatory temperature checks and symptom questionnaires for COVID-19 screening prior to clocking into DEFENDANT's timekeeping system for the workday." (*Id.*); "[W]hen calculating the regular rate of pay in order to pay overtime and meal and rest break premiums to PLAINTIFF and other CALIFORNIA CLASS Members, DEFENDANT failed to include the incentive compensation as part of the employees' 'regular rate of pay'" (Compl., ¶ 10); "PLAINTIFF and other CALIFORNIA CLASS Members were from time to time unable to take thirty (30) minute off duty meal breaks and were not fully relieved of duty for their meal periods" (Compl., ¶ 11); "DEFENDANT from time to time failed to provide PLAINTIFF and CALIFORNIA CLASS Members with a second off-duty meal period for some workdays in which these employees were required…to work ten (10) hours…" (*Id.*); "DEFENDANT also engaged in the practice of rounding the meal period times to avoid paying penalties…" (*Id.*); "PLAINTIFF and other CALIFORNIA CLASS Members were…required from time to time to work in excess of four (4) hours without being provided ten (10) minute rest periods" (Compl., ¶ 12); "Further, these employees were denied their first rest periods of at least ten (10) minutes for some shifts worked of at least two (2) to four (4) hours from time to time, a first and second rest period of at least ten (10) minutes for some shifts worked of between six (6) and eight (8) hours from time to time, and a first, second and third rest period of at least ten (10) minutes for some shifts worked of ten

(10) hours or more from time to time" (*Id.*); "DEFENDANT's policy restricted PLAINTIFF and other CALIFORNIA CLASS Members from unconstrained walks…based on DEFENDANT's rule which state[d] PLAINTIFF and other CALIFORNIA CLASS Members [could not] leave the work premises during their rest period" (*Id.*); "During the CALIFORNIA CLASS PERIOD, DEFENDANT failed to accurately record and pay PLAINTIFF and other CALIFORNIA CLASS Members for the actual amount of time these employees worked" (Compl., ¶ 13); "From time to time, DEFENDANT…failed to provide PLAINTIFF and the other members of the CALIFORNIA CLASS with complete and accurate wage statements which failed to show, among other things, the correct gross and net wages earned" (Compl., ¶ 14); "DEFENDANT from time to time failed to pay PLAINTIFF and members of the CALIFORNIA LABOR SUB-CLASS Members within seven (7) days of the close of the payroll period" (Compl., ¶ 16); "Rather than pay sick pay at the regular rate of pay, DEFENDANT underpaid sick pay to PLAINTIFF and other CALIFORNIA CLASS Members at their base rates of pay" (Compl., ¶ 17); "As a pattern and practice, DEFENDANT regularly failed to pay PLAINTIFF and other members of the CALIFORNIA CLASS their correct wages and accordingly owe waiting time penalties pursuant to Cal. Lab. Code Section 203" (Compl., ¶ 20); "DEFENDANT…made unlawful deductions from compensation payable to PLAINTIFF and CALIFORNIA LABOR SUB-CLASS Members..." (Compl., ¶ 21); "DEFENDANT intentionally and knowingly failed to reimburse and indemnify PLAINTIFF and the other CALIFORNIA CLASS Members for required business expenses" (Compl., ¶ 22); "PLAINTIFF and other CALIFORNIA CLASS Members…were required by DEFENDANT to use their own personal cellular phones…but [were] not reimbursed…by DEFENDANT for the cost associated with the use of their personal cellular phones..." (Compl., ¶ 23); "DEFENDANT…intentionally, knowingly and systematically failed to provide PLAINTIFF and the other Aggrieved Employees suitable seating when the nature of

these employees' work reasonably permitted sitting" (Compl., ¶ 24); and "All the acts described herein…were unlawful and in violation of public policy, were immoral, unethical, oppressive and unscrupulous, were deceptive, and thereby constitute unlawful, unfair and deceptive business practices in violation of Cal. Bus. & Prof. Code §§ 17200, et seq." (Compl., ¶ 60).

15. Removal of a class action under CAFA is proper if: (1) there are at least one hundred (100) members in the putative class; (2) there is minimal diversity between the parties, such that at least one class member is a citizen of a state different from any defendant; and (3) the aggregate amount in controversy exceeds five million dollars ($5,000,000), exclusive of interest and costs. *See* 28 U.S.C. §§ 1332(d), 1441.

16. Defendant denies any liability in this case, both as to Plaintiff's individual claims and as to the claims he seeks to pursue on behalf of the putative class. However, solely for purposes of the jurisdictional requirements for removal, the allegations in Plaintiff's Complaint and a thorough analysis of Defendant's data demonstrate a putative class of more than one hundred (100) members and the alleged claims placed in controversy are, in the aggregate, an amount substantially exceeding five million dollars ($5,000,000). *See* 28 U.S.C. § 1332(d)(6).

**A.   The Proposed Class Consists of More Than One Hundred (100) Members**

17. Based on the allegations in the Complaint, this action satisfies CAFA's requirement that the putative class contains at least one hundred (100) members. *See* 28 U.S.C. § 1332(d)(5)(B).

18. As to the First Cause of Action, Plaintiff proposes to represent the following Class: "[A]ll individuals who are or previously were employed by DEFENDANT in California, including any employees staffed with DEFENDANT by a third party, and classified as non-exempt (the "CALIFORNIA CLASS") at any time during the period beginning four (4) years prior to the filing of this Complaint and

ending on the date as determined by the Court (the "CALIFORNIA CLASS PERIOD")." (Compl., ¶ 30.)

19. As to the remaining eighth causes of action, Plaintiff proposes to represent the following California sub-class: "[A]ll individuals who are or previously were employed by DEFENDANT in California, including any employees staffed with DEFENDANT by a third party, and classified as non-exempt (the "CALIFORNIA CLASS") at any time during the period beginning three (3) years prior to the filing of this Complaint and ending on the date as determined by the Court (the "CALIFORNIA LABOR SUB-CLASS PERIOD")." (Compl., ¶ 40.)

20. The putative classes consist of those who were and are employed by Defendant in California at any time during the period of four (4) years prior to the filing of the Complaint. (*Id.*, ¶¶ 30 and 40.) Based on a review of the Defendant's business records, the putative class, as defined by Plaintiff's Complaint, includes over 41,046 putative class members. (Declaration of John Babick in Support of Defendant's Notice of Removal ("Babick Decl."), ¶ 4.)

21. Although Defendant denies class treatment is appropriate, Plaintiff's proposed class, as pled, and if certified, would easily consist of more than one hundred (100) members

**B.    Diversity of the Parties Exists**

22. Under CAFA's minimum diversity of citizenship requirement, the plaintiff or any member of the putative class must be a citizen of a different state from any defendant. *See* 28 U.S.C. § 1332(d)(2)(A). That is, the citizenship of at least one class member is diverse from the citizenship of at least one defendant. *Id.*

23. A person is a citizen of the state in which he or she is domiciled. *Kantor v. Wellesley Galleries, Ltd.,* 704 F.2d 1088, 1090 (9th Cir. 1983). A party's residence is *prima facie* evidence of his or her domicile. *Ayala v. Cox Auto., Inc.,* No. CV 16-06341-GHK (ASx), 2016 WL 6561284, at *4 (C.D. Cal. Nov. 4, 2016) (citing *State Farm Mut. Auto Ins. Co. v. Dyer,* 19 F.3d 514, 520 (10th Cir. 1994)). Plaintiff has

alleged he is a resident of California. (Compl., ¶ 3.) These allegations are *prima facie* evidence of domicile, which creates a rebuttable presumption sufficient to support removal. *Lew v. Moss,* 797 F.2d 747, 751 (9th Cir. 1986) (allegations of residency in state court complaint create rebuttable presumption of domicile). Plaintiff is therefore considered a citizen of California for purposes of removal under CAFA. *See Ayala,* 2016 WL 6561284 at *4.

24. The citizenship of an LLC for the purposes of diversity jurisdiction is the location of citizenship of its members. *Johnson v. Columbia Props. Anchorage, LP,* 437 F.3d 894, 899 (9th Cir. 2006).

25. At the time this action commenced in state court and as remains today, Defendant AutoZoners, LLC is a limited liability company organized under the laws of the State of Nevada. (Declaration of Patrick Johnson in Support of Defendant's Notice of Removal ("Johnson Decl."), ¶¶ 3-4.)  The sole member of AutoZoners, LLC is AutoZone Investment Corporation, which performs its executive and administrative functions in Memphis, Tennessee. (*Id.,* ¶¶ 5-6.) The President, Chief Executive Officer, Chief Financial Officer, and General Counsel all operate out of the high level corporate office in Memphis, Tennessee. (*Id.*)

26. The Supreme Court has interpreted the phrase "principal place of business" in 28 U.S.C. § 1332(c)(1) to mean "the place where a corporation's officers direct, control, and coordinate the corporation's activities," *i.e.,* its "nerve center," which "should normally be the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination[.]" *Hertz Corp. v. Friend,* 559 U.S. 77, 92-93 (2010).

27. AutoZoners, LLC's business operations and executive and administrative functions are controlled by its corporate headquarters in Memphis, Tennessee. (Johnson Decl., ¶ 6.)

28. Thus, Defendant AutoZoners, LLC is a citizen of Tennessee.

///

29. "For purposes of removal … the citizenship of defendants sued under fictitious names shall be disregarded." 28 U.S.C. § 1441(b)(1). Inclusion of "DOE" defendants in a state court Complaint has no effect on removability. *Newcombe v. Adolf Coors Co.,* 157 F.3d 686, 690 (9th Cir. 1998) (holding that in determining whether diversity of citizenship exists, only named defendants are considered). Therefore, Plaintiff's inclusion of DOES 1 through 50 in the Complaint is irrelevant to the issue of diversity for purposes of removal.

30. Pursuant to 28 U.S.C. §§ 1332(a) and 1441(a), this Court has original jurisdiction over this case under CAFA because Plaintiff is and was, at all times relevant to this action, a citizen of the State of California, and Defendant AutoZoners, LLC is and was, at all times relevant to this action, a citizen of the State of Tennessee, respectively. Therefore, complete diversity between Plaintiff and Defendant exists now, and did exist at the time the Complaint was filed, and minimal diversity exists between Defendant and the putative class.

**C.     The Amount in Controversy Exceeds Five Million Dollars ($5,000,000)**

31. Pursuant to 28 U.S.C. § 1332(d), this Court has original jurisdiction over this matter because, in addition to the other requirements of § 1332(d), the amount in controversy in this action exceeds five million dollars ($5,000,000), exclusive of interest and costs. *See* 28 U.S.C. § 1332(d)(2). Of note, in calculating the amount in controversy, a court must aggregate the claims of all individual class members. *See* 28 U.S.C. § 1332(d)(6).

32. Unlike other cases, there is no anti-removal presumption for cases invoking CAFA. *Arias v. Residency Inn by Marriott,* 936 F.3d 920, 922 (9th Cir. 2019).

33. "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Op. Co. v. Owens,* 574 U.S. 81, 89 (2014). A removing defendant's

notice of removal "need not contain evidentiary submissions." *Arias,* 936 F.3d at 922 (quoting *Ibarra v. Manheim Invs., Inc.,* 775 F.3d 1193, 1197 (9th Cir. 2015)). Thus, to satisfy its burden, a defendant may rely on a "chain of reasoning" that is based on "reasonable" "assumptions." *LaCross v. Knight Transp. Inc.,* 775 F.3d 1200, 1201 (9th Cir. 2015). "An assumption may be reasonable if it is founded on the allegations of the complaint." *Arias,* 936 F.3d at 925; *see also Salter v. Quality Carriers, Inc.,* 974 F.3d 959, 964 (9th Cir. 2020) ("[I]n *Arias* we held that a removing defendant's notice of removal need not contain evidentiary submissions but only plausible allegations of jurisdictional elements.") (internal citations and punctuation omitted). That is because "[t]he amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Lewis v. Verizon Commc'ns, Inc.,* 627 F.3d 395, 400 (9th Cir. 2010). "[I]n that sense, the amount in controversy reflects the maximum recovery the plaintiff could reasonably recover. *Arias,* 936 F.3d at 927 (explaining that amount in controversy includes all amounts "at stake" in the litigation at time of removal, "whatever the likelihood that [plaintiff] will actually recover them") (citing *Chavez v. JPMorgan Chase & Co.,* 888 F.3d 413, 417 (9th Cir. 2018)). "[W]hen a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." *Dart Cherokee,* 574 U.S. at 87. Moreover, "when a statute or contract provides for the recovery of attorneys' fees, prospective attorneys' fees must be included in the assessment of the amount in controversy." *Arias,* 936 F.3d at 922.

      34.    Moreover, in assessing whether the amount in controversy requirement has been satisfied, "a court must 'assume that the allegations of the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made in the complaint.'" *Campbell v. Vitran Exp., Inc.,* 471 F. App'x 646, 648 (9th Cir. 2012) (quoting *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter,* 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002)). Indeed, the focus of the Court's inquiry must be on

"what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will actually owe." *Korn v. Polo Ralph Lauren Corp.,* 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008) (citing *Rippee v. Boston Mkt. Corp.,* 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005)).

35. Here, Plaintiff makes allegations that Defendant has consistent practices and policies in effect which result in wage and hour violations. (Compl., ¶¶ 8-27; 35(a); 37(b)(1); 39; 46(c); 53-54, 69-70; 75; 84; 90; 94; 107; 115; 119; 121-122.) Further, Plaintiff has placed no limit on the frequency of the alleged violations in the Complaint. Thus, it is entirely reasonable for Defendant to assume up to a 100% violation rate for each of Plaintiff's claims. *See, e.g., Lewis,* 627 F.3d at 398-401; *Rea v. Michaels Stores Inc.,* 742 F.3d 1234, 1239 (9th Cir. 2014) (per curiam); *Bryant v. NCR Corp.,* 284 F. Supp. 3d 1147, 1151 (S.D. Cal. 2018) (holding where plaintiff did not submit any evidence as to violation rates, "assumption of a 100 percent violation rate may have been reasonable based on the allegations in the Complaint," which "offered no guidance as to the frequency of the alleged violations, only that [d]efendant had 'a policy and practice' of meal and rest period violations"); *Lopez v. Aerotek, Inc.,* No. SACV 14-00803-(CJGx), 2015 WL 2342558, at *3 (C.D. Cal. May 14, 2015) (finding "Aerotek could have logically assumed a 100 percent violation rate because Plaintiff does not qualify his allegations" and "[a]lthough afforded the opportunity to do so on this motion, Plaintiff does not assert or suggest an alternative violation rate on which the Court should rely").

36. Although Defendant categorically denies Plaintiff's claims have any merit, whatsoever, solely for the purposes of meeting the jurisdictional requirements for removal, if Plaintiff were to prevail on his First through Ninth Causes of Action on behalf of the putative classes, the requested monetary recovery would far exceed five million dollars ($5,000,000).

///

///

### 1. Plaintiff's waiting time claim places $11,274,557 in controversy

37. Plaintiff alleges that as a pattern and practice, Defendant regularly failed to pay Plaintiff and the putative class all wages owe and that they are entitled to waiting time penalties pursuant to Labor Code § 203. (Compl., ¶¶ 20; 77; 92; 115.)

38. If an employer fails to pay all wages due an employee at the time of termination, as required by Labor Code § 201, or within 72 hours after resignation, as required by Labor Code § 202, then the wages "shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced," for up to a maximum of 30 calendar days. Labor Code § 203. An employer may not be liable for these penalties if a good-faith dispute exists as to whether the wages are owed. Further, to be liable for waiting time penalties, an employer's failure to pay wages within the statutory time frame must be willful. "A willful failure to pay wages within the meaning of Labor Code section 203 occurs when an employer intentionally fails to pay wages to an employee when those wages are due." Cal. Code Regs., tit. 8, § 13520.

39. To calculate waiting time penalties, the employee's daily rate of pay is multiplied by a maximum of thirty (30) days, depending on the length of delay in receipt of wages. *See Mamika v. Barca,* 68 Cal. App. 4th 487, 493 (1998) (holding that waiting time penalty is "equivalent to the employee's daily wages for each day she or he remained unpaid up to a total of 30 days" and noting that "critical computation" is "the calculation of a daily wage rate, which can then be multiplied by the number of days of nonpayment, up to 30 days"); *Tajonar v. Echosphere, LLC,* No. 14cv2732-LAB (RBB), 2015 WL 4064642, at *4 (S.D. Cal. Jul. 2, 2015). Where final "wages [due] are alleged to have not been paid, the full thirty-days may be used for each of the putative class members." *Marentes v. Key Energy Servs. Cal., Inc.,* No. 1:13-cv-02067 AWI JLT, 2015 WL 756516, at *9 (E.D. Cal. Feb. 23, 2015); *see also Crummie v. CertifiedSafety, Inc.,* No. 17-cv-03892-RS, 2017 WL 4544747, at *3

(N.D. Cal. Oct. 11, 2017) (holding that where plaintiff alleges "putative class members were owed (and are still owed)" wages, it is "completely reasonable to assume waiting time penalties accrued to the thirty-day limit").

40. Defendant denies any such penalties are owed to Plaintiff or any putative class members. However, solely for purposes of this jurisdictional analysis, Defendant relies on Plaintiff's allegations that the penalties are owed. Plaintiff's claim is derivative of his minimum wage, overtime, and meal and rest penalty claims, which Plaintiff alleges were a result of Defendant's policies and practices. (Compl., ¶¶ 20; 77; 92; 115.)

41. Based on Plaintiff's allegations, it is reasonable to assume that 100% of the former, non-exempt employees (in the three-year section 203 limitations period) are entitled to thirty (30) days' wages. *See Crummie,* 2017 WL 4544747 at *3 (upholding assumption that "waiting time penalties accrued to the thirty-day limit" based on allegations of a pattern or practice of withholding wages owed); *Archuleta v. Avcorp Composite Fab., Inc.,* No. CV 18-8106 PSG (FFMx), 2018 WL 6382049, at *5 (C.D. Cal. Dec. 6, 2018) (assumption of maximum 30-day waiting time penalties was reasonable where "[t]he complaint's claim for waiting time penalties appears to be at least in part based on an allegation that Defendants never paid the 'overtime wages, minimum wages, and meal period violation [payments]' the employees were due"); *Avila v. Rue21, Inc.,* 432 F. Supp. 3d 1175, 1188 (E.D. Cal. 2020) ("Because Plaintiff is asking for a maximum statutory penalty of 30 days … it is reasonable to assume based on the FAC that Plaintiff could obtain statutory penalty of maximum 30 days."); *Mariscal v. Ariz. Tile, LLC,* No. 8:20-cv-02071-JLS-KES, 2021 WL 1400892, at *3 (C.D. Cal. Apr. 14, 2021) (same); *Chavez v. Pratt (Robert Mann Packaging), LLC,* No. 19-CV-00719-NC, 2019 WL 1501576, at *4 (N.D. Cal. Apr. 5, 2019) ("By tying the unpaid final wage claim to his other claims, Chavez makes Pratt's assumption of 100% violation for unpaid wages reasonable—that is, if every putative class member incurred damages for at least one other claim in the

complaint, every class member who departed Pratt during the statutory period was due unpaid wages."); *Mackall v. Healthsource Glob. Staffing, Inc.,* No. 16-cv-03810-WHO, 2016 WL 4579099, at *6 (N.D. Cal. Sep. 2, 2016) (finding that "allegations of willful failure to timely pay final wages (based on alleged overtime and meal and rest break violations)" support an estimated 100% violation rate for waiting time penalties). However, although a 100% violation rate would be appropriate, to err on the side of being conservative, Defendant has estimated the waiting time penalties exposure based upon a mere fifteen (15) percent violation rate.

42. Thus, to calculate the amount in controversy for the waiting time penalty claim, Babick analyzed the business records of Defendant for the putative class members to determine the number of former employees in the putative class who separated their employment with AutoZone within the three (3) year statute of limitation period (May 17, 2020 to present). (Babick Decl., ¶ 9.) Between May 17, 2020 and June 17, 2023, 22,694 employees were terminated or separated from their employment. (*Id*.) Using a fifteen (15) percent violation rate, waiting time penalties would be triggered for 3,404 employees. (Babick Decl., ¶ 10.) Thus, the amount in controversy for the waiting time claim for the subset of separated employees was estimated by multiplying each final base hourly rate of 22,694 separated employees, by the average hours worked per shift, by thirty (30) days, by fifteen (15) percent. (*Id*.)

43. Based on Plaintiff's allegations, the amount in controversy on the waiting time penalty claim is $11,274,557 (*Id*.)

44. Plaintiff's allegations therefore place more than the requisite five million dollars ($5,000,000) in controversy. The jurisdictional amount-in-controversy requirement is met, and removal to this Court is proper under CAFA.

### III. DEFENDANT HAS SATISIFED THE REQUIREMENTS OF 28 U.S.C. § 1446

45. In accordance with 28 U.S.C. § 1446(a), this Notice of Removal is filed

in the District Court of the United States in which this action is pending. The Superior Court of California, San Diego County, is located within the Southern District of California. Therefore, venue is proper in this Court because it is the "district and division embracing the place where such action is pending." 28 U.S.C. §§ 84(a) and 1441(a).

46. In accordance with 28 U.S.C. § 1446(a), copies of all process, pleadings, orders, and other papers served upon Defendant are attached hereto as **Exhibit A.**

47. In accordance with 28 U.S.C. § 1446(d), Defendant's counsel shall serve Plaintiff with a copy of this Notice of Removal and will file a Notice with the Clerk for the San Diego County Superior Court. Defendant shall file a Notice of Compliance of these requirements in this Court promptly after completion.

48. As required by Fed. R. Civ. P. 7.1, Defendant concurrently files their Certificate of Interested Parties with this filing of the Notice of Removal.

## IV. CONCLUSION

49. For the foregoing reasons, Defendant AUTOZONERS, LLC hereby removes the above-entitled action to the United States District Court for the Southern District of California.

50. In the event this Court has any questions regarding the propriety of this Notice of Removal, Defendant requests this Court set an evidentiary hearing so that it may have an opportunity to more fully brief the Court on the basis of this removal.

DATED: August 7, 2023

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By: /s/ Evan R. Moses
Evan R. Moses
Alexandra Asterlin
Eric E. Suits

Attorneys for Defendant
AUTOZONERS, LLC

# CERTIFICATE OF SERVICE

I am and was at all times herein mentioned over the age of 18 years and not a party to the action in which this service is made. At all times herein mentioned I have been employed in the County of Sacramento in the office of a member of the bar of this court at whose direction the service was made. My business address is 500 Capitol Mall, Suite 2500, Sacramento, CA 95814. My email address is: elaine.blizzard@ogletree.com.

On August 7, 2023, I served the following document(s):

**DEFENDANT AUTOZONERS, LLC'S NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT**

by placing ☐ (the original) ☒ (a true copy thereof) in a sealed envelope addressed as stated on the attached service list:

☒ **BY MAIL:** I placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with the practice of Ogletree, Deakins, Nash, Smoak & Stewart, P.C.'s practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

I declare that I am employed in the office of a member of the State Bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on August 7, 2023 at Sacramento, California.

_____
Elaine M. Blizzard

## SERVICE LIST

| | |
|---|---|
| Norman B. Blumenthal<br>Kyle R. Nordrehaug<br>Aparajit Bhowmik<br>Nicholas J. De Blouw<br>BLUMENTHAL NORDREHAUG<br>BHOWMIK DE BLOUW LLP<br>2255 Calle Clara<br>La Jolla, CA  92037 | Attorneys for Plaintiff<br>ZACHARY LEWIS<br><br>Tel:  (858) 551-1223<br>Fax:  (858) 551-1232<br>Email:  norm@bamlawca.com<br>         kyle@bamlawca.com<br>         aj@bamlawlj.com<br>         DeBlouw@bamlawca.com |
| John Gomez<br>Emilia Arutunian<br>GOMEZ TRIAL ATTORNEYS, APLC<br>655 Broadway, 17th Floor<br>San Diego, CA  92101 | Tel:  (619) 237-3490 |